Dear Mr. Goldberg:
This letter is in response to your question asking for an interpretation of Section 30(a) of Article IV of the Missouri Constitution, with respect to the distribution of motor fuel tax receipts.
We believe that the language of Article IV, Section 30(a) sub. 1(1), sets forth explicitly the factors to be used in determining the distribution of county aid road trust fund moneys. Among other things, one half of the special trust fund is to be distributed to the various counties on the ratio that the rural land valuation of each county bears to the rural land valuation of the entire state, as determined by the last available report of the State Tax Commission. The term "rural land" is defined in this constitutional section as all land located within any county, except land in incorporated villages, towns or cities.
The report of the State Tax Commission referred to in this constitutional section can only be the annual report of the Commission issued pursuant to Section 138.440, RSMo. This report includes a county-by-county breakdown of all real property into town lots and farming lands. This breakdown stems from the State Tax Commission's obligation under Section138.390, RSMo, to equalize the aggregate valuations between counties and to classify all real estate into two categories: (1) town lots and (2) farming lands. Town lots are defined in this section as all real estate "situated in cities, towns and villages."
We believe that the term "rural land," as used in the Constitution, and the term "farming lands," as used in Section 138.390, are synonymous. Likewise the term "town lots" as used in Section 138.390 can only refer to property lying within the boundaries of an incorporated city, town or village. Therefore, in determining the proper ratios for distribution of the county aid road trust funds to the various counties, the Director of Revenue should use the figures contained in the latest annual report of the State Tax Commission for farming lands.
It is our understanding that, in the past, such funds have been distributed on the basis of reports furnished your department by the various counties and that some such reports are at variance with the figures in the State Tax Commission report. It is also our understanding that the figures furnished by some counties to the State Tax Commission have been in error at least in part. Although the aggregate real estate values submitted to the Commission were apparently correct, the allocation of those values between the categories of farming lands and town lots was based upon an improper standard. However, as we understand it, the distribution of the funds, by your department has been made on the basis of figures furnished your department by the counties and although some such figures are at variance with the figures submitted by the counties to the State Tax Commission they nevertheless appear to be the more nearly correct figures. It seems clear then that although the precise figures which were utilized were not obtained from the State Tax Commission (except most recently) the resulting distribution was based upon a ratio that was probably an equitable ratio in that it apparently more closely conformed to the constitutional requirements.
Therefore, insofar as future action by your department is concerned, it is our view that the State Tax Commission should permit amendments by the counties to be made to their reports filed with the Commission so that the distribution for the calendar year beginning in January, 1979, may be adjusted based upon amended figures made available by a State Tax Commission report to the Department of Revenue. This will of course necessitate a proper liaison between the State Tax Commission and the counties to determine which counties have erred in the past in submitting such figures to the State Tax Commission and to receive the required accurate information from such counties. As we indicated, after such amended statistics are obtained from the counties the State Tax Commission should make available to your department an amended report and your department, in our view, should adjust the ratios for this calendar year so that the proper distribution is made.
Insofar as your question relates to what action should be taken concerning any error that may have been involved in the past it is our view that there is no clear showing at this time that there has been any substantial error in the computation of figures used for the distribution of such funds in the past. Although the Department of Revenue has not used State Tax Commission figures, as we indicated, in view of the erroneous figures submitted by certain counties, the use of the State Tax Commission figures would have resulted in an erroneous distribution of such funds. Also as we indicated, there is no clear showing that the figures actually used by the Department of Revenue have been substantially in error although they were furnished by the counties directly to the Department of Revenue contrary to the constitutional mandate.
To summarize, we see no compelling reason to attempt to adjust any figures prior to January, 1979. The State Tax Commission should permit the counties to submit proper amended figures and thereafter the State Tax Commission should make available to the Department of Revenue a report based on such amended figures so that the Department of Revenue will have the last available report of the State Tax Commission which it may use to adjust the distribution of such county aid road trust funds for the 1979 calendar year.
Very truly yours,
 JOHN ASHCROFT Attorney General
cc: State Tax Commission